Turley, J.,
delivered the opinion of the court.
Hiram Graves, John Caruthers, and William Brown, entered into a contract on the 25th day of September, 1830, with the board of Tennessee canal commissioners, by which they bound themselves to procure the materials, prepare the foundation and construct the walls and wing dams designated for the improvement of the navigation of the Tennessee below Florence, for which services the commissioners were to pay the consideration agreed upon with the parties, which need not be here specified. — The board of commissioners reserved to themselves the right of reducing or increasing the cost of the work, subject to a reasonable and fair deduction •from, or addition to, the prices agreed upon. The work to be finished within thirty months after the time the engineer should require the work to be begun. The board of commissioners also reserved to themselves the right and privilege of changing (he location and form, and varying the estimated dimensions of said walls or wing dams, as convenience or public expedience might require, and assign as a reason for so doing, that it was the intention of the board of internal improvements for the United States, not to construct the dam or walls before the result of certain dragging and sluicing of the channel should be ascertained; and it was expressly agreed that as soon as the work for dragging and clearing out the channel, or any section of it should be completed, and the result ascertained, the engineer should immediately determine the form and location of the dam in said sections.
After this contract was made, and before any part of it was performed, Hiram Graves, for, and in consideration of the sum of $9,000, assigned all his interest in it to his co-partner, John Caruthers. All of this sum has been paid; except the note for $2000, which is the subject matter of contro *63 versy in this suit. After the contract was assigned, the persons employed by the canal commissioners to drag and sluice the river, failed to comply with their contract, part of which it is proven it was impracticable to execute with their means in the time prescribed for its completion. The consequence was that the river was not dragged and cleared, as contemplated, and therefore the board of the Tennessee canal commissioners refused to permit the erection of the dams and wings contracted for by Graves, Caruthers & Co., by which Caruthers sustained losses, for which the commissioners paid him five thousand dollars. But this, it is alledged, did not more than pay him for his expenses; and that the whole affair has been a losing concern to him, because of his not having been permitted to erect the walls and dams, which were the profitable parts of the contract, and without which, he would not have purchased his co-partner’s interest therein.
Upon this state of the case, it is contended that the contract of assignment between Hiram Graves and James Ca-rutbers was void, because at the time it was made, the performance of the contract assigned, depended upon the contingency of dragging and sluicing the river, which was found to be impracticable; and that therefore, there was in fact, no contract to be assigned. To this objection, there are two answers, either of which, in our opinion, are good and sufficient, 1st. There is nothing in the case which shows that it was impracticable to drag and sluice the river. It is spoken of as a matter of great difficulty in part, and as impracticable to its full extent, in the time prescribed in the contract, with the persons who had engaged to do it, with the means by them employed, &c.
The contract made with Graves, Caruthers & Co., was not dependent upon the contract for dragging and sluicing the river; and it would have been no defence for the canal commissioners, if sued upon their contract, to have said that Drum, Elder & Co., failed to drag and sluice the river, and therefore, we refused to execute our contract with you. They had reserved to themselves no such right — their contract for building the walls and wing dams, was absolute, not dependent upon any condition; and if it had been found utterly *64 impracticable to drag and sluice the river, and so made it useless to build the dams, they would have still been liable for a refusal on their part to permit it. It is true they reserved to themselves the right of changing the location and form, and varying the estimated dimension of said wall and wing dams, so commenced, as public expedience might require. But this is nothing like a reservation of the power to dispense with their erection altogether, and they agree that so soon as the work for dragging and clearing out the channel of the river or any section of it shall be completed, the engineer shall immediately determine the form and location of the dam in such section.
The provisions in the contract made it necessary to desist till some portion of the river was dragged and sluiced, before the erection of the dams was commenced; but no time being specified for this to be done, and it not being made to depend upon a contingency, the canal commissioners were bound to have it done in a reasonable time, and if they did not they were liable to an action by Graves, Caruthers & Co. It is not pretended that Graves practised any fraud upon Caruthers in his contract with him; he assigned him all his interest in a valid and subsisting contract, about which Caruth-ers knew as much as he, and because the canal commissioners have failed to execute their part of the contract, furnished no reason why Caruthers should be relieved fiom his. That the commissioners might do so, if they thought proper to disregard this contract and risk the consequences was evident, and affords us no more reason for rescinding Grave’s contract with Caruthers, than would the refusal of a debtor to pay his note which had been assigned without recourse, vitiate the assignment and make the assignor responsible for the amount paid for it. And such a view seems to have been taken of the contract both by the canal commissioners and Caruthers, for they paid him five thousand dollars to cover his damages, sustained by reason of their non-performance of their part of the contract which they need not have done had they reserved the right so to do.
But we are furthermore of the opinion that if such reservation had been made in the contract, Caruthers, by the as» *65 signm ent took it subject thereto, and could not be heard to complain afterwards at its exercise. He got what he bought, there was no fraud practised on him, and though the contract was a loosing one, yet the law compels him to abide by it; so that whatsoever way we look at this contract, we are compelled to say that the court below erred in the administration of the law.
The judgment must therefore be reversed and the case remanded for a new trial.